IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,           §
                                    §
                    Plaintiff,      §
                                    §
                                    §   Criminal No. 3:09-CR-249-D(1)
VS.                                 §
                                    §
CHASTITY LYNN FAULKNER,             §
                                    §
                    Defendant.      §

MEMORANDUM OPINION
AND ORDER

Treating defendant Chastity Lynn Faulkner's ("Faulkner's") March 16, 2010 motion for reconsideration of pretrial detention order[1] as a motion under 18 U.S.C. § 3145(b)[2] for revocation or amendment of the magistrate judge's detention order, and following *de novo* review of a recording of the detention hearing,[3] the court

---

[1]Faulkner filed her motion on March 16, 2010, and the government filed a response the next day. Under N.D. Tex. Crim. R. 47.1(f), the government's brief should have been the last, because Faulkner did not seek leave to file a reply brief. Faulkner nevertheless filed a reply on March 22, the government filed a surreply on March 25, and Faulkner filed a so-called second reply on March 26. Although the court has considered these additional briefs in deciding Faulkner's motion, it expects her to comply with the local criminal rules during the remainder of this case.

[2]Faulkner cites 18 U.S.C. § 3142 as the basis for her motion, but that section applies to the initial consideration of release or detention of a defendant pending trial.

[3]"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). Reviewing a recording of the detention hearing is an appropriate procedure to comply with that obligation. *See, e.g.,*

denies the motion.

I

Faulkner is charged in two counts of a second superseding indictment, returned on March 24, 2010.[4]  In count one, she is charged with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349.  In count two, she is charged with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2).[5]  Her trial is scheduled for October 2010.  Following her arrest, she appeared before a magistrate judge on February 1, 2010 for a detention hearing.  The government's witness—an FBI special agent who investigated this case—testified that Faulkner was arrested in January 2010 after being removed from Mexico.  Faulkner had lived there under an assumed name until Mexican authorities determined that her travel visa had expired. The magistrate judge ordered Faulkner detained, finding that she presents a flight risk.  Faulkner contends that the government has failed to demonstrate by a preponderance of the evidence that no bond conditions will ensure her appearance at trial.

---

*United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

[4]There is also a forfeiture count against her.

[5]She is charged under the penalty provision of 18 U.S.C. § 1037(b)(2)(C).  She is also charged as an aider and abetter under 18 U.S.C. § 2.

- 2 -

II

A

"If, after a hearing . . ., the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . ., such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). The court applies a preponderance of the evidence standard in determining that no condition or combination of conditions will reasonably assure the defendant's presence at trial. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

B

The government's witness testified that Faulkner left her Keller, Texas home in July or August 2009, when she took her three children to join her husband and alleged coconspirator, Michael Blaine Faulkner ("Michael"), in Mexico.[6] While there, she and her husband lived under assumed identities, using Nevada driver licenses and license plates. When confronted by Mexican authorities for overstaying her tourist visa, she initially denied her true identity. According to the agent, although some of the

---

[6]The court has not assumed in deciding this motion that Faulkner entered Mexico illegally. Regardless whether the magistrate judge acted on the belief that Faulkner's entry into Mexico was illegal, this court's review is *de novo*, and it can order Faulkner detained based on its own review of the record, without considering whether her entry was legal or illegal.

Faulkners' domestic bank accounts were seized, they had other accounts in foreign countries. Michael allegedly continued to operate his criminal enterprise while in Mexico, defrauding companies by an additional $1 million. The agent was unable to determine where that money was located.

Faulkner contends that her relocation to Mexico was intended to unite her family, not to avoid prosecution. She points out that she remained in her Keller home until after the completion of her children's school year, although her husband had departed for Mexico in April 2009. And she states that she had not yet been indicted when she left for Mexico and that she left her Keller home only because it was being foreclosed on for nonpayment of the mortgage. The court is not persuaded by these arguments.

Faulkner's flight to Mexico occurred after search warrants were executed in March and April 2009 at the Faulkners' home and at business locations associated with Michael. Faulkner did not voluntarily return to the United States after she was indicted in September 2009.[7] Instead, she enrolled her children in Mexican schools under alias names. When she left Keller, she did not arrange for the orderly sale of the family's assets. Personal possessions and food were left in their home, and the couple ceased

---

[7]The agent testified that Michael made Internet postings under a fictitious name indicating that he was aware of the Indictment. It is therefore reasonable to infer that Faulkner was aware that she had been indicted.

making house payments, allowing the bank to foreclose.  Faulkner
and Michael took their leased cars to Mexico and stopped making the
lease payments.  Although Faulkner was not prohibited from leaving
Keller, she was told that doing so without alerting government
investigators would be perceived as flight.  She could then, as she
asks to do now, have moved in with her parents in East Texas.  Her
departure to Mexico and her conduct while there provide at least a
preponderance of, if not compelling, evidence of flight to avoid
anticipated prosecution.

Faulkner also contends that the government has offered little
evidence of her guilt.  She asserts that she was mainly a homemaker
and that she was not involved in her husband's conduct.  The agent
testified, however, that emails indicate she was involved in the
operation of at least some of the shell companies used in the
alleged fraudulent conduct, including sending letters demanding
payment from customers who were in arrears.  She was also listed as
an officer in at least one of the companies involved in the alleged
fraud.  The government has at least produced credible evidence that
Faulkner knowingly joined in the conspiracy alleged in count one.

Faulkner also contends that she has strong family ties to the
area and that, if released, she would reside with her parents in
East Texas.  But these family ties existed when she fled to Mexico
to avoid prosecution.  Faulkner also maintains that she is
financially unable to flee, but the FBI agent testified that the $1

million that the conspiracy generated while the Faulkners were in Mexico remains unaccounted for.  Faulkner also asserts that her parents are willing to offer cash or their home as part of a surety bond.  But there is compelling evidence that this, alone or in combination with other factors, would not reasonably assure Faulkner's presence at trial.  Specifically, Faulkner was willing to abandon her home and possessions to flee to Mexico, live under an assumed name, and remain there for a considerable period (inhibited only because Mexican authorities stepped in).  The government has proved by a preponderance of the evidence that her presence at trial could not be any more reasonably assured if her parents assisted in obtaining a surety bond.

Based on the circumstances surrounding her departure from Keller and her conduct once in Mexico, the court finds that Faulkner has demonstrated both an ability and a desire to flee from prosecution.  The court finds, based on a preponderance of the evidence, that no condition or combination of conditions will reasonably assure her presence at trial.

III

Accordingly, the court denies Faulkner's March 16, 2010 motion for reconsideration of pretrial detention order.  The court orders that Faulkner be held without bond pending the trial of this action as follows.  She is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the

extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.   She is to be afforded reasonable opportunity for private consultation with her counsel. By order of this court, to be issued in the future, the person in charge of the corrections facility in which Faulkner is to be confined is to deliver her to a United States Marshal for the purpose of appearing in connection with any court proceeding.

*     *     *

Faulkner's March 16, 2010 motion for reconsideration of pretrial detention order is denied.

**SO ORDERED.**

April 1, 2010.

SIDNEY A. FITZWATER
CHIEF JUDGE